# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-183


RICHARD DURAN ARMSTRONG, ET UX.

VERSUS

SAFEWAY INSURANCE COMPANY, ET AL.


************

APPEAL FROM THE
PINEVILLE CITY COURT
PARISH OF RAPIDES, NO. 8-0623
HONORABLE J. PHILLIP TERRELL, JR., CITY JUDGE

************

DAVID E. CHATELAIN[*]
JUDGE

************

Court composed of Sylvia R. Cooks, J. David Painter, and David E. Chatelain, Judges.


**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**



**William M. Ford**
**Attorney at Law**
**Post Office Box 12424**
**Alexandria, Louisiana 71315**
**(318) 442-8899**
**Counsel for Plaintiffs/Appellees:**
    **Richard Duran Armstrong**
    **Cassondra Price Armstrong**

---

[*]Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Dana C. Graham**
**Borne & Wilkes, L.L.P.**
**Post Office Box 4305**
**Lafayette, Louisiana  70502**
**(337) 232-1604**
**Counsel for Defendants/Appellants:**
**Safeway Insurance Company**
**Darrell Frost**

**CHATELAIN, Judge.**

The defendants, Safeway Insurance Company of Louisiana (Safeway) and Darrell Frost (Frost), appeal from a judgment rendered in favor of the plaintiff, Richard D. Armstrong (Armstrong), awarding him property damages plus penalties and attorney fees. We affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

Frost and Armstrong were involved in an automobile accident on April 12, 2008, in Pineville, Louisiana. As a result of the accident, Armstrong suffered personal injuries as well as property damage to the 1982 Chevrolet Corvette that he was operating at the time. The defendants stipulated to liability at trial. In addition, the parties informed the trial court that Armstrong's personal injury claims and his wife's loss of consortium claims had been settled, but Armstrong had reserved his rights against the defendants with regard to his property damage claims, including an allegation that the defendants were liable for penalties and attorney fees for failing to timely pay his property damage claim.

Following a one-day trial held on August 14, 2009, the trial court took the matter under advisement. In written reasons for judgment issued on October 2, 2009, the trial court found that Armstrong's Corvette was a "well-maintained classic." It accepted Armstrong's evidence showing the total cost to repair the Corvette was $7,007.00, and it awarded that amount to Armstrong as property damages. In addition, Armstrong was awarded $3,503.50 in penalties and $5,000.00 in attorney fees, plus court costs. Judgment conforming to the substance of the written reasons was signed on November 6, 2009.

1

The defendants now appeal, asserting two assignments of error. First, they claim that the $7,007.00 property damage award is contrary to the evidence and testimony offered at trial. Second, the defendants contend that the trial court erred in concluding that Safeway acted arbitrarily and capriciously, thus making it liable to Armstrong for penalties and attorney fees.

## DISCUSSION

In *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989) (citations omitted), the Louisiana Supreme Court set out the appellate standard of review as follows:

> [A] court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. . . . [I]f the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.

> This court has stated the following with regard to property damage claims:

> When property is damaged through the legal fault of another, the primary objective is to restore the property as nearly as possible to the state it was in immediately preceding the damage; it is well settled that the measure of damage is the cost of restoring the property to its former condition. In assessing damage to the property, generally, courts have considered the cost of restoration as the proper measure of damage where the thing damaged can be adequately repaired.

*Rogers v. Commercial Union Ins. Co.*, 01-443, pp. 6-7 (La. App. 3 Cir. 10/3/01), 796 So.2d 862, 867 (*quoting Coleman v. Victor*, 326 So.2d 344 (La.1976)).

### *Testimony and Evidence Presented at Trial*

Armstrong testified that he initially took his vehicle to Advanced Collision (Advanced). However, when the repair work was delayed due to Advanced's busy schedule, he chose to have Jack Powell's Body Shop (Powell's) complete the repairs, which consisted of changing the front caps and the front clip, both made of fiberglass, and repainting the damaged areas. Armstrong incurred towing charges of $175.00 to transport the vehicle from Advanced to Powell's.

Armstrong explained that his hobby was buying, restoring, and reselling antique automobiles. Armstrong stated that the vehicle was "an antique and a classic" that was in excellent condition and had never been wrecked before the subject accident. Because he had seen poor fiberglass repairs in the past, Armstrong elected to have the front caps and the front clip replaced, rather than simply repaired, in order to maintain the vehicle's integrity.

Powell's charged Armstrong $5,045.05. He explained that he had purchased the necessary parts from Ecklers, a company that supplies replacement parts for Corvettes, and that the parts were shipped directly to Powell's. Armstrong identified and submitted as exhibits invoices from Ecklers in the amounts of $1,239.59, $61.23, $195.99, and $317.24. Armstrong also purchased a tire at a cost of $147.90.

Armstrong testified that Safeway sent him a check in the amount of $3,815.00, dated May 12, 2008, which contained the following notation: "Full and final settlement PD claim for accident on 4/12/08." He was not willing to accept that amount because he believed that his property damage claim was much greater than the settlement offer. Thereafter, he hired an attorney to pursue his property damage claim. Armstrong identified a certified letter that his attorney mailed to Safeway on

3

June 16, 2008, returning the proposed settlement check and informing Safeway that he would be willing to accept an unconditional tender of funds.

Armstrong acknowledged that Safeway had informed him that he could request additional amounts to cover any supplemental repairs for damage discovered after Safeway's initial estimate. He testified that Safeway issued a check for $342.97 to cover supplemental damages. On cross-examination, Armstrong agreed that some of the repair work done to his vehicle was noticeable, but he explained that he was working with Powell's to fix some "minor flaws" that remained.

Jack Powell identified the $5,045.05 invoice associated with the repair of Armstrong's Corvette and stated that Armstrong had paid the invoice in full. According to Powell, the areas needing touch-ups were "smaller than . . . your little fingernail," and the repairs would not require grinding or fiberglass. Powell stated that Armstrong would not be charged for the touch-up work.

The front end cap was off of the vehicle when it was delivered to his shop, leaving Powell with no option but to replace, rather than repair, it. Because he never saw the vehicle in its accident condition, Powell stated that he could not honestly answer whether Safeway's initial and supplemental repair estimates were reasonable; he agreed, however, that the vehicle could have been repaired in many different ways and that he had no reason to doubt the Safeway estimates.

John Abshire, a body shop owner with over thirty years of experience in repairing vehicles, testified for the defendants. Abshire related that he had extensive experience repairing Corvettes and that he formerly owned a custom Corvette shop in New Orleans. He stated that Kent Wilson, the appraiser who compiled the repair estimates for Safeway, had initially contacted him to inquire, in general terms, about

4

repairing a crack in the fender of a Corvette. He told Wilson that a cracked fiberglass fender could be easily repaired. Later, Wilson asked him to look at photographs of Armstrong's Corvette and to review the repair estimate that Wilson had prepared. In Abshire's opinion, the fender could have been patched rather than completely repaired and Wilson's estimate was fair and reasonable. He also prepared an estimate of the cost to repair the Armstrong vehicle; his estimate totaled $40.00 more than Wilson's estimate.

Abshire stated that he had not actually seen the Corvette in person until his deposition, taken several months prior to trial, when it was parked outside of Armstrong's attorney's office. He observed that the vehicle had a new front end cap and that the entire vehicle had been painted. He could see where the vehicle had been repaired. In his opinion, the problem could be corrected by grinding and patching the fiberglass, that is, by using the technique Safeway initially recommended. On cross-examination, Abshire agreed that Armstrong had the right to be concerned about the way his vehicle was going to be repaired because it would affect the vehicle's value. Further, he agreed that there was nothing wrong with the way the vehicle was repaired and that Powell's charges were "very, very reasonable." Abshire acknowledged that Wilson, on behalf of Safeway, regularly referred business to Abshire's body shop.

Matt Allen, a licensed claims adjuster for Safeway who had been assigned to Armstrong's file, also testified for the defendants. He stated that after receiving the file, he had an appraisal done and sent a check to Armstrong in the amount of $3,815.00, along with a letter advising Armstrong that he could have his vehicle repaired at the body shop of his choosing and that a supplemental check would be

5

issued to the body shop if it later discovered "any hidden damage . . . or rate differences, etc." Allen admitted, however, that the check contained a notation that it represented a full release of Armstrong's property damage claim and that any supplemental repairs would have to be approved by Safeway. When the original check Safeway issued to Armstrong was returned, Allen did not issue an unconditional tender of the amount of that check.

Because the defendant's appraiser, Kent Wilson, was unavailable for trial, the defendants submitted his deposition as a trial exhibit. Wilson explained that he had worked as an appraiser for twenty-five years before becoming a staff appraiser for Safeway seven years ago. He examined Armstrong's vehicle three days after the accident.[1] In his appraisal, he noted that the vehicle could be repaired in six days at a cost of $3,815.00. He determined that because only the front left side of the vehicle had been damaged, it could be repaired by sectioning off and splicing the front cover rather than by replacing it entirely. He did, however, authorize the replacement of the front left fender. According to Wilson, someone from Advanced verified that the repairs could be done in the manner that he outlined in his appraisal. Later, Wilson received a call from Advanced notifying him that they had discovered additional damage when the wheel was removed. Thereafter, Wilson reinspected the vehicle and issued a $342.00 supplement check to Advanced to pay for a new wheel and inner fender and a front-end alignment.

---

[1]Wilson initially stated in his deposition that he first viewed the vehicle at Advanced. Later, when questioned by Armstrong's attorney, he remembered having actually met Armstrong at Kees Park in Pineville to inspect the vehicle before it was brought to Advanced.

When cross-examined in his deposition, Wilson admitted that he had consulted Abshire in formulating his initial appraisal. He explained that he consulted an expert because he did not "do fiberglass work" and wanted "to have my ducks in line."

### Property Damages

The defendants assert that the repairs to Armstrong's Corvette could have been performed in the manner detailed and for the amount listed in the Safeway estimate. They contend that Safeway's estimate was fair and reasonable and that the vehicle could have been repaired to make the repair unnoticeable and at nearly half of the cost of repairing the vehicle in the manner Armstrong demanded.

In his appellee brief, Armstrong concedes that "[a]ll body men involved had indicated that [the $3,815.00 initial Safeway estimated] was a fair and sufficient estimate to make a repair job to the automobile by patching it and using the existing damaged fender and hood." Armstrong further agrees that "when hidden damage was discovered Safeway wrote a check for the hidden damage." Nevertheless, Armstrong points out that each of the body men involved in this matter agreed that his vehicle was an antique and/or a classic and that Armstrong did nothing improper in demanding that his vehicle be repaired by replacing the front end cap, rather than merely repairing it. Moreover, Armstrong submits that the defendants offered no evidence to show that his vehicle could be repaired with a new front end cap for less than the $7,007.00 that the repairs cost him.

After having carefully reviewed the record, we are convinced that the trial court did not err in awarding Armstrong $7,007.00 in compensation for the property damage that he incurred as a result of the April 12, 2008 accident. Safeway's appraiser, Wilson, admitted that he did not "do fiberglass work," and that he had

7

contacted Abshire, whom he considered to be an expert in that field, in formulating his initial appraisal. Given that Abshire did not view the Armstrong vehicle in person before giving his opinion as to whether the vehicle could be repaired in the manner recommended by Wilson, we cannot say that the trial court erred in discrediting Safeway's claim that Armstrong should have been limited to repairing, rather than replacing, the front end cap. Moreover, Armstrong's attorney elicited testimony to show that Abshire had a vested interest in giving testimony favorable to Safeway, because Wilson admitted that he sometimes referred business to Abshire's body shop.

Both Powell and Abshire agreed that Armstrong's vehicle could have been repaired in several different ways and that Armstrong had the right to be concerned about the way that his vehicle was going to be repaired. Because the trial court was presented with "two permissible views of the evidence, [its] choice between them cannot be manifestly erroneous or clearly wrong." *Rosell*, 549 at 844. Armstrong carried his burden of proving the amount of property damage he incurred as a result of the accident. The defendants simply argued that Armstrong's vehicle could have been repaired in the manner recommended by its appraiser; they did not argue that any of the costs incurred by Armstrong to have his vehicle repaired in the manner that he chose were otherwise unreasonable. Accordingly, we conclude that the trial court did not err in awarding Armstrong the full amount of his proven property damages.[2] The defendants' first assignment of error lacks merit.

---

[2] The trial court's property damage award does not include the $175.00 towing charge Armstrong incurred in having his vehicle moved from Advanced to Powell's. Because Armstrong did not appeal or answer the defendants' appeal with regard to this element of his damages, we need not discuss whether the trial court erred in not including reimbursement for the towing charges in its damage award.

## *Penalties and Attorney Fees*

In its written reasons, the trial court found that Safeway's "failure to at least make an unconditional tender, as well as failing to pay the amount owed, was done arbitrarily, capriciously and without appropriate cause, and therefore subjects [it] to the penalties provided under Louisiana law." As a result, Armstrong was awarded $3,503.50 in penalties and $5,000.00 in attorney fees, plus court costs.

The duties owed to a third party claimant by an insurer are found in La.R.S. 22:1892(A).[3] According to that statute, the insurer:

> (2) . . . shall pay the amount of any third party property damage claim and of any reasonable medical expenses claim due any bona fide third party claimant within thirty days after written agreement of settlement of the claim from any third party claimant.
>
> (3) . . . shall initiate loss adjustment of a property damage claim and of a claim for reasonable medical expenses within fourteen days after notification of loss by the claimant. . . . Failure to comply with the provisions of this Paragraph shall subject the insurer to the penalties provided in R.S. 22:1973.[4]
>
> (4) . . . shall make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim.

The statute further provides for penalties for the breach of the aforementioned duties, in pertinent part, as follows:

---

[3]This statute was renumbered from La.R.S. 22:658 by Acts 2008, No. 415, § 1, effective January 1, 2009.

[4]This statute was renumbered from La.R.S. 22:1220 by Acts 2008, No. 415, § 1, effective January 1, 2009. Louisiana Revised Statutes 22:1973(A) provides, in pertinent part, that an "insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both." The statute lists six acts, which if the insurer knowingly commits, amount to a breach of the duties imposed in Subsection A. La.R.S. 22:1973(B). One of those six enumerated acts is "[f]ailing to pay claims pursuant to R.S. 22:1893 when such failure is arbitrary, capricious, or without probable cause." La.R.S. 22:1973(B)(6). The statutes' penalty section provides that "[i]n addition to any general or special damages to which a claimant is entitled . . . , the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater." La.R.S. 22:1973(C).

B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proof of loss of that claim, as provided in Paragraphs (A)(1) and (4), respectively, or failure to make such payment within thirty days after written agreement of settlement as provided in Paragraph (A)(2), when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, . . . or in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs. . . .

In *Langsford v. Flattman*, 03-0189, p. 3 (La. 1/21/04), 864 So.2d 149, 151, the supreme court explained that "[t]he relationship between the insurer and the third party claimant is neither fiduciary nor contractual; it is fundamentally adversarial. For that reason, a cause of action directly in favor of a third party claimant is generally not recognized absent statutory creation."

The defendants claim that they fulfilled all of the duties imposed by La.R.S. 22:1892 and La.R.S. 22:1973.[5] They submit that Safeway timely initiated loss adjustment because it promptly assigned an appraiser to the file and an inspection of Armstrong's vehicle was performed within three days of the accident. Because there was never a written agreement to settle the property damage claim, the defendants suggest that they could not have violated Section 1892(A)(2)'s requirement that any settlement be paid within thirty days. Finally, the defendants argue that Safeway did

---

[5]Armstrong alleged in his petition that the defendants had violated several other statutes with regard to their handling of his property damage claim. Neither the judgment nor the trial court's written reasons specifically refer to which statute(s) the defendants had violated thus making them liable to Armstrong for penalties and attorney fees. The defendants argue in their appellate brief that only La.R.S. 22:1892 and La.R.S. 22:1973 are relevant to the matter before us; Armstrong does not challenge this argument. Accordingly, this opinion addresses only the aforementioned statutes.

not receive satisfactory proof of loss until it was able to verify, through the accident report, that Armstrong was the owner of the Corvette until "sometime between April 23, 2008 and May 12, 2008." They submit that the check sent to Armstrong on May 12, 2008, within thirty days of receipt of proof of loss and thirty days of the accident, though issued as an offer to fully settle the property damage claim, could be considered a written offer to settle in compliance with Section 1892(A)(3). Essentially, the defendants argue that because their actions regarding Armstrong's property damage claim were fair and reasonable, the trial court erred in concluding that their actions were arbitrary and capricious and in finding them liable for penalties and attorney fees. Citing *Mallett v.McNeal*, 05-2289 (La. 10/17/06), 939 So.2d 1254, *Riser v. Shelter Mutual Insurance Co.*, 43,617 (La.App. 2 Cir. 10/29/08), 997 So.2d 675, and *Young v. Gremillion*, 05-802 (La.App. 5 Cir. 3/14/06), 924 So.2d 1285, the defendants contend that insurers have no duty to make unconditional tenders to third parties on property damage claims.

Armstrong counters that the defendants' failure to unconditionally pay him at least the amount of the Safeway estimate was arbitrary and capricious under the facts of this case, subjecting the defendants to a judgment against them for penalties and reasonable attorney fees.

In *Ledet v. National Car Rental System Inc.*, 96-1270 (La.App. 3 Cir. 6/4/97), 694 So.2d 1236, the plaintiff, who was injured when a rented automobile struck his vehicle, filed suit against the driver of the automobile and the rental company seeking damages as a result of the personal injuries and property damages he sustained in the accident. After a bench trial, the plaintiff was awarded $10,000.00 in general damages, $5,310.19 in special damages, and $434.70 in property damages. The

11

plaintiff appealed, arguing that the trial court erred in failing to award him penalties and attorney fees for the rental company's having violated La.R.S. 22:658 and La.R.S. 22:1220, now La.R.S. 22:1892 and La.R.S. 22:1973, in failing to pay or unconditionally tender compensation for his personal injury and property damage claims.[6] A representative of the rental company testified that the lowest property damage appraisal totaled $434.70. He offered $407.70 in full and final settlement of the property damage claim because he believed that the appraisal contained an inflated charge for labor. The plaintiff refused this offer. This court found that there was no written agreement of settlement. Accordingly, we determined that the rental company had no duty to make payment, and we affirmed the trial court's denial of penalties and attorney fees under La.R.S. 22:658. With regard to the plaintiff's claims that the rental company violated the duty imposed in La.R.S. 22:1220, we stated:

> The Louisiana Supreme Court in *Theriot v. Midland Risk Ins. Co.*, 95-2895 (La.5/20/97), 694 So.2d 184, on rehearing, concluded that Subsection A of the above quoted statute does not create a broad duty to third-party claimants to make a reasonable effort to settle all claims. The conduct for which damages and penalties can be sought by insureds and third-party claimants is limited by Subsection B's exclusive list.

*Ledet*, 694 at 1241. Because the plaintiff had not alleged, and the facts of the case did not indicate, that the rental company had not committed any of the acts listed in La.R.S. 22:1220(B), we determined that the plaintiff had no right of action for penalties under La.R.S. 22:1220.

---

[6]In an earlier decided summary judgment, the trial court found that the rental company provided liability insurance coverage for the accident based on the rental contract with its customer. The rental company challenged this ruling in answer to the plaintiff's appeal. We upheld the trial court's decision.

The undisputed facts in the case herein demonstrate that the defendants fully complied with the duties imposed by La.R.S. 22:1892 and La.R.S. 22:1973 with regard to the handling of Armstrong's property damage claim. Similar to the plaintiff in *Ledet*, Armstrong has not alleged that the defendant violated any of the specific duties imposed by those statutes. Instead, he claims that the defendants' failure to unconditionally tender the amount of the Safeway estimate was arbitrary and capricious, subjecting the defendants to a judgment against them for penalties and reasonable attorney fees. The law simply does not require an insurer to offer a third party claimant an unconditional tender. Accordingly, the portion of the trial court's judgment awarding Armstrong penalties and attorney fees is reversed.

## DECREE

For the reasons assigned, the portion of the trial court judgment awarding Richard D. Armstrong $7,007.00 in property damages is affirmed. The portion of the trial court judgment awarding Richard D. Armstrong $3,503.50 in penalties and $5,000.00 in attorney fees is reversed.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**